IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

PATRICIA RAY GRAHAM,            )
                                )          No.  37827-6-III
                    Respondent, )
                                )
        v.                      )
                                )
ALISHA SILBAUGH,                )          UNPUBLISHED OPINION
                                )
                    Appellant.  )

STAAB, J. — Patricia Graham petitioned for an order for protection against Alisha

Silbaugh on the basis of unlawful harassment following a series of events that caused

both her and her minor daughter, BRK, to be scared of Ms. Silbaugh.  Ms. Silbaugh is an

acquaintance of BRK's biological father and became acquainted with Ms. Graham and

her daughter when she drove the father to a visitation with BRK.  The district court

granted a temporary ex parte order and then scheduled a hearing on the petition.  After

reviewing the record and taking testimony, the superior court granted Ms. Graham's

petition and issued an order preventing Ms. Silbaugh from contacting Ms. Graham or her

daughter, coming within 500 feet of their home or work place, and preventing her from

keeping them under surveillance.

Ms. Silbaugh appealed the decision, arguing on appeal that the court violated her due process and First Amendment rights in issuing the order. She also contends that the evidence is insufficient to support the finding of unlawful harassment. Finding that the evidence is sufficient and that Ms. Silbaugh's rights were not violated, we affirm.

As a preliminary matter, we address compliance with the Rules of Appellate Procedure (RAP) and the courts role on appeal. *State v. Marintorres*, 93 Wn. App. 442, 452, 969 P.2d 501 (1999). Ms. Silbaugh is representing herself and is not an attorney. While we respect her efforts, as a pro se appellant, she is held to the same standard as an attorney. *Edwards v. Le Duc*, 157 Wn. App. 455, 464, 238 P.3d 1187 (2010).. Under RAP 10.3(a)(5), appellant's brief must contain a statement of the case that includes "facts and procedure relevant to the issues presented for review, without argument. Reference to the record must be included for each factual statement." Ms. Silbaugh's statement of the case does not cite to the record except to occasionally cite an exhibit. In addition, her brief contains numerous factual assertions that are not contained in the record, and are irrelevant to her issues on appeal. We do not consider facts outside the record. Nor do we consider allegations that are irrelevant to the legal issues on appeal in this case. Allegations concerning an unrelated custody case, or Ms. Graham's history of treatment and prior conviction are all irrelevant to the issues on appeal and will not be considered.

The order for protection from which Ms. Silbaugh appeals was issued by a superior court judge following a hearing in which both parties testified. During such a

2

hearing, the judge sits as the finder of fact. "An essential function of the fact finder is to discount theories which it determines unreasonable because the finder of fact is the sole and exclusive judge of the evidence, the weight to be given thereto, and the credibility of witnesses." *State v. Bencivenga*, 137 Wn.2d 703, 709, 974 P.2d 832 (1999) (citing *State v. Snider*, 70 Wn.2d 326, 327, 422 P.2d 816 (1967)). The Court of Appeals is not a trial court and we do not provide a second opportunity to argue and decide disputed facts. "The power of this court is appellate only, which does not include a retrial here but is limited to ascertaining whether the findings are supported by substantial evidence or not." *Stringfellow v. Stringfellow*, 56 Wn.2d 957, 959, 350 P.2d 1003 (1960).

As an appellate court, we do not reweigh the evidence. *Harrison Mem'l Hosp. v. Gagnon*, 110 Wn. App. 475, 485, 40 P.3d 1221 (2002). Instead, following a bench trial, we review the record in a light most favorable to the prevailing party to determine if substantial evidence supports the trial court's findings of fact and, if so, whether the findings support the conclusions of law. *Id*. at 484-86. We consider specific issues raised in the briefs that include citation to legal authority and references to the relevant portions of the record. RAP 10.3(a)(6). We need not consider arguments that are unsupported by meaningful analysis or authority. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

FACTS

Ms. Graham has a minor daughter, BRK, with her ex-husband, Robbert Korth. After they divorced, Mr. Korth agreed that Ms. Graham could have full custody of BRK. Ms. Graham lives in Yakima. Mr. Korth currently works as a handyman for Ms. Silbaugh in western Washington.

Ms. Graham and Ms. Silbaugh first met in April 2020, when Ms. Silbaugh drove Mr. Korth to a visitation with BRK at Ms. Graham's home. In her petition, Ms. Graham alleges that over the next several months Ms. Silbaugh injected herself into Ms. Graham's family law matters and began a pattern of harassing Ms. Graham and her daughter. Ms. Graham's allegations include conduct directed toward herself and her daughter, as well as Ms. Silbaugh's communications with third persons. Because Ms. Silbaugh raises First Amendment issues, we distinguish between allegations of harassment directed at Ms. Graham and her daughter and allegations that Ms. Silbaugh disseminated information about Ms. Graham to third parties.

During Mr. Korth's visit in April, BRK told her mother that Ms. Silbaugh had a camera in her pocket and appeared to be recording the visit. At the hearing on the final order, Ms. Silbaugh denied recording, but Ms. Graham testified that the video of the visit was subsequently sent by Ms. Silbaugh to the father of another child of hers who she was at the time in a custody battle with. The video showed Ms. Graham and her new boyfriend. Ms. Graham also alleged that Ms. Silbaugh continued to send unwelcome

4

messages through social media to herself and her current boyfriend. She said Ms. Silbaugh has appeared at her home and stood at the end of the driveway filming her, and has driven by screaming out her window at Ms. Graham and her daughter. Ms. Graham stated that both she and her daughter were frightened by Ms. Silbaugh's actions and decision to interject herself into a family law matter in which she has no connection.

In her petition in support of an order for protection, Ms. Graham also alleged communications between Ms. Silbaugh and third persons. Ms. Graham alleged that Ms. Silbaugh had mailed Ms. Graham's boyfriend a packet containing all of Ms. Graham's criminal records. She stated that Ms. Silbaugh anonymously sent pictures, screenshots, and memes insinuating that Ms. Graham is a prostitute to third parties and accused Ms. Graham of acting like a prostitute in court documents related to the custody action between Ms. Graham and Mr. Korth.

On September 24, 2020, a district court judge granted Ms. Graham a temporary order for protection. Before this order could be served, Ms. Silbaugh appeared at Ms. Graham's home with Mr. Korth for another visit with BRK. According to Ms. Graham, when Ms. Silbaugh arrived, she walked into the road and began taking pictures and recording Ms. Graham's home. Ms. Graham's dogs came out and Ms. Silbaugh started screaming that she was being attacked and threatened to call animal control. BRK begged her not to. Ms. Silbaugh then came toward Ms. Graham in an aggressive manner.

Ms. Graham was in "fear of [her] life" so she called 911 and informed them that she had a temporary anti-harassment order against Ms. Silbaugh. Report of Proceedings (RP) at 6. Police responded to the incident. According to the police report, Ms. Silbaugh had not yet been served with the order on that date. The responding police officer informed Ms. Silbaugh of the order and she and Mr. Korth left. Ms. Silbaugh was formally served with Ms. Graham's petition and the temporary order on September 30, 2020.

ANALYSIS

Victims of unlawful harassment may petition for an ex parte temporary protection order that may become permanent at a subsequent hearing. RCW 10.14.040, .080. Additionally, "[t]he parent or guardian of a child under age eighteen may petition for an order of protection to restrain a person age eighteen years or over from contact with that child upon a showing that contact with the person to be enjoined is detrimental to the welfare of the child." RCW 10.14.040(6).

A petitioner for a protective order must show they have been a victim of unlawful harassment. "Unlawful harassment" is defined as "a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, harasses, or is detrimental to such person, and which serves no legitimate or lawful purpose. The course of conduct shall be such as would cause a reasonable person to suffer substantial emotional distress, and shall actually cause substantial emotional distress to the

6

petitioner, or, when the course of conduct would cause a reasonable parent to fear for the well-being of their child." RCW 10.14.020(2). "'Course of conduct' means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose," but does not include constitutionally protected free speech. RCW 10.14.020(1).

Unlawful harassment need not stem from one single act. *State v. Whittaker*, 192 Wn. App. 395, 406, 367 P.3d 1092 (2016). The combination of multiple acts that are "seriously alarm[ing], annoy[ing], harass[ing], or detrimental to the victim" can combine to create unlawful harassment. *Id.* at 406 (alterations in original) (internal quotation marks omitted) (quoting *State v. Haines*, 151 Wn. App. 428, 435, 213 P.3d 602 (2009); *State v. Kintz*, 169 Wn.2d 537, 555-58, 238 P.3d 470 (2010) (finding repeated incidents of unlawful harassment where individual in van followed and drove past woman and her children on four occasions and stopped vehicle for prolonged period of time while in close proximity to woman and finding multiple incidents of unlawful harassment where van drove past female runner on multiple occasions, asked for directions twice from runner, and offered money and a ride to runner).

On appeal, Ms. Silbaugh assigns error to the trial court's failure to apply a clear, cogent, and convincing burden of proof. The relevant statute requires proof by a preponderance of the evidence. RCW 10.14.080(3). Ms. Silbaugh fails to distinguish this authority, fails to argue that the statute is unconstitutional, and fails to cite authority

for her own position. We therefore decline to consider the argument. *Cowiche Canyon Conservancy*, 118 Wn.2d at 809 (We need not consider arguments that are unsupported by meaningful analysis or authority.).

Ms. Silbaugh avers that her procedural due process rights were violated because she was never served with Ms. Graham's reply declarations. She does not cite to the record or any authority to support this assertion. During the hearing on the final order before the district court and later before the superior court, Ms. Silbaugh mentioned that she had not been served with Ms. Graham's response. But at no point does Ms. Silbaugh object to the court considering the responsive declarations or request a continuance to review the documents. We decline to address an issue raised for the first time on appeal. RAP 2.5(a).

Next, Ms. Silbaugh argues that the order for protection in this case violates her First Amendment right to free speech. It is clear that the trial court considered allegations that Ms. Silbaugh publically referred to Ms. Graham as a prostitute in finding unlawful harassment. Upon questioning by the court, Ms. Silbaugh clarified that she only compared Ms. Graham to a prostitute because she believed that only a court could declare her a prostitute. On appeal, Ms. Silbaugh suggests that she has a First Amendment right to compare Ms. Graham to a prostitute.

A protection order that is based solely on protected free speech is invalid. *Catlett v. Teel*, 15 Wn. App. 2d 689, 699, 477 P.3d 50 (2020). Defamatory language is generally

not protected, but defamatory speech must be certain and apparent from the words themselves. *Id*. at 705. Likewise, an order for protection that restricts future speech may constitute a "prior restraint" and is heavily disfavored. *In re Marriage of Suggs*, 152 Wn.2d 74, 81, 93 P.3d 161 (2004).

In this case, the superior court implicitly found Ms. Silbaugh's accusation that Ms. Graham was a prostitute to be defamatory: "Ms. Silbaugh . . . [y]ou have your own understanding what it means to call somebody a prostitute, but somebody does not have to be prosecuted to be harmed and hurt by being called a prostitute." RP (Oct. 13, 2020) at 20. As defamatory, the speech is not protected and the court did not err in relying upon it to find harassment. Nonetheless, the allegation was only part of the evidence considered by the trial court. Even if we were to excise the allegation from consideration, the evidence is still sufficient to support the court's finding of unlawful harassment. Moreover, the order for protection does not prevent Ms. Silbaugh from making future allegations about Ms. Graham, though she may be held liable for such comments if they are found to be defamatory.

Finally, Ms. Silbaugh contends that the allegations in the petition and the evidence considered by the trial court were insufficient. After considering the evidence in a light most favorable to Ms. Graham, we find that the evidence is sufficient to support the trial court's finding that Ms. Graham has been the subject of unlawful harassment by Ms. Silbaugh. Not only does the evidence demonstrate a pattern of contacting third parties

9

with allegations and pejorative information about Ms. Graham, but Ms. Graham testified to several instances where Ms. Silbaugh contacted Ms. Graham, secretly recorded conversations in Ms. Graham's home, kept Ms. Graham's home under surveillance, and yelled in the presence of Ms. Graham's minor daughter. She testified that she and her daughter were scared of Ms. Silbaugh because her actions seemed irrational.

Ms. Silbaugh contends that Ms. Graham's allegations were false and not credible. In support, she points to Ms. Graham's criminal history, including convictions for driving under the influence while noting that she, Ms. Silbaugh, does not have prior convictions. She fails to cite any authority to support her theory that a criminal history in general or convictions for driving under the influence are relevant to a witness's credibility. *See* ER 609. Regardless, credibility is a question for the superior court, not the court of appeals. *Harrison Mem'l Hosp.*, 110 Wn. App. at 485.

Ms. Silbaugh also contends that the trial court ignored her own testimony and was partial to Ms. Graham. To the extent Ms. Silbaugh is arguing judicial bias by the trial court, she fails to assign error to this issue or properly develop the issue in her briefing. *Cowiche Canyon Conservancy*, 118 Wn.2d at 809 (We need not consider arguments that are unsupported by meaningful analysis or authority.).

No. 37827-6-III
*Graham v. Silbaugh*

We hold that the trial court did not violate Ms. Silbaugh's constitutional rights and the evidence is sufficient to support the finding of unlawful harassment. We therefore affirm.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Fearing, J.

_____
Pennell, C.J.