# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| SIERRA PACIFIC INDUSTRIES, INC., | No.  54724-4-II |
| Appellant, | |
| v. | |
| HARRY A. OLSON and the WASHINGTON STATE DEPARTMENT OF LABOR AND INDUSTRIES, | UNPUBLISHED OPINION |
| Respondents. | |

PRICE, J. — Harry Olson made a workers' compensation claim based on injuries to his neck that occurred when he was participating in a welding training program.  He received benefits and the claim was closed in 2014.  Three years later, he sought to reopen the claim alleging his neck condition had objectively worsened.  The Board of Industrial Insurance Appeals allowed the reopening of the claim, finding that the condition that was proximately caused by the workplace injury had objectively worsened since Olson's claim was closed.  After a bench trial, the superior court affirmed the Board's findings of fact and conclusions of law.

Sierra Pacific Industries, Inc. appeals the superior court's ruling affirming the Board's order.  Sierra Pacific argues that Olson presented insufficient medical testimony to support the findings entered by the superior court.  Because substantial evidence supports the superior court's findings, we affirm the superior court's decision.

FACTS

I. BACKGROUND

In 2004, Harry Olson sustained a left knee injury while working for Sierra Pacific Industries, Inc. Due to this incident, Olson participated in a vocational training program for welding, and in April 2007 he sustained further injuries to his neck. Olson filed a workers' compensation claim that included all of his injuries with the Department of Labor and Industries. The Department accepted the claim.

On October 22, 2014, the Department closed Olson's claim. The Department rated Olson a "Category 3 cervical permanent partial disability." Clerk's Papers (CP) at 8, 372. Neither party appealed this order.

In June 2017, Olson applied to reopen his claim because his cervical condition was worsening. Olson wrote on the application that he suffered from pain and numbness. Dr. Robert Lang, Olson's treating physician, saw Olson in May 2017 and determined that his condition did in fact worsen, based on measurable symptoms. In Olson's June 8, 2017, application for reopening, an advanced registered nurse practitioner at Olson's doctor's office, with the review and signature of Dr. Lang, filled out the medical form. They wrote the following as to support objective worsening of Olson's injury:

> Diminished sensation temperature right middle finger. Reduction in circumference of upper arm from 29.5 cm right 29 cm left 1/14/13 to 23 cm left and 23 cm right 5/23/17.

CP at 161. In the application, Dr. Lang provided further evidence for a medical worsening, including symptoms of "muscle tension in the back of the neck, stiffness, numbness in the left and right hands" and physical limitations preventing the patient from working as "limited cervical

2

flexion, limited shoulder abduction and flexion bilaterally." *Id.* Dr. Lang confirmed in a causation statement that Olson's symptoms were the result of the covered injury.

II. ADMINISTRATIVE DECISION

On September 26, 2017, the Department denied Olson's application for reopening his claim. Olson appealed the Department's order, and the parties appeared at a hearing before an industrial appeals judge.

The parties stipulated that the terminal dates between which Olson must show an objective worsening of his neck condition were October 22, 2014, and September 26, 2017. The judge heard testimony from Olson and his sister Corinne Tobeck and considered the perpetuation deposition testimony of Dr. Lang and Sierra Pacific's expert witness, Dr. D. Casey Jones.

A. TESTIMONY OF OLSON AND TOBECK

At the hearing, Olson argued that his cervical condition had resulted from the April 2007 welding incident, and it worsened between October 22, 2014, and September 26, 2017. He testified that the problems with his neck, arms, and hands had progressively worsened from 2014 to 2017. He wanted to reopen the claim because his neck hurt, and he suffered from numbness "a lot more often" in his arm and numbness in his hands. CP at 188. He had difficulty standing from his bed, and the amount he could lift had decreased since 2014. Tobeck corroborated this testimony, explaining that in 2013, Olson had gardened, mowed the lawn, and cut wood, but he no longer engaged in those activities. Olson acknowledged that he had been in a number of car accidents during the relevant time period, however, he denied that he sustained any injuries as a result.

B.  PERPETUATION DEPOSITION TESTIMONY OF DR. ROBERT LANG

Dr. Lang began treating Olson in 2010 before the closure of Olson's claim, but did not see him between May 2013 and May 2017.  In his July 2018 deposition, Lang opined that Olson experienced an objective worsening of his medical condition after October 22, 2014, based on his assessment of Olson and electrodiagnostic and radiographic findings.  Dr. Lang concluded that Olson's objective medical worsening of his cervical condition between October 2014 and September 2017 was causally related to Olson's prior workplace injury, on a more-probable-than-not basis:

> Q: Is it your opinion that between October 22, 2014, and September 26, 2017, there was an objective medical worsening causally related to the industrial injury?
>
> A: Yes.

CP 255.

During the deposition, Dr. Lang was shown a copy of the application for reopening.  In that form, Dr. Lang stated that Olson's symptoms were the result of the covered injury and provided evidence for a medical worsening.  Dr. Lang confirmed the statements he provided for Olson's June 2017 application for reopening were accurate.

Dr. Lang reviewed electrodiagnostic studies conducted by Dr. Mohammed Saeed related to Olson's condition to determine that the C7 radiculopathy[1] had objectively worsened between 2013 and 2017.  In 2013, Dr. Saeed made findings "compatible with significant long-standing right

---

[1] "Radiculopathy" is a "[d]isorder of the spinal nerve roots."  STEDMAN'S MEDICAL DICTIONARY 1622 (28th ed. 2006).

C6 and C7[2] radiculopathy" with more involvement of the C7 nerve root.  CP at 243.  In a later 2017 electrodiagnostic study, Saeed described longstanding "[m]oderately severe bilateral C7 radiculopathy."  CP at 244 (internal quotation marks omitted).  Dr. Lang testified that these studies showed that the C7 radiculopathy had worsened electrodiagnostically.

Next, Dr. Lang testified regarding radiological findings from a cervical MRI conducted in 2017 and compared those findings to MRIs in 2012 and 2013.  The findings showed changes at multiple levels, including a worsening of stenosis (narrowing).  Dr. Lang testified in 2017 there was "mild to moderate central canal narrowing at C3-C4, C5-C6, and C6-C7.  Neuroforaminal narrowing[3] is moderate to severe C5-C6 on the right and C7-T1 on the left."  CP at 245.  From the radiological findings, Dr. Lang emphasized the C6-C7 level and the description of a new disc protrusion in 2017 that was absent from the earlier studies.  He also testified that the recent 2017 study described a "mild to moderate" stenosis, which was worse than what appeared the March 2012 MRI findings.  CP at 248.  Dr. Lang concluded that "there has been objective worsening according to the radiographic findings."  CP at 249.

In 2017, Dr. Lang recommended surgery at the C5-C6 and C6-C7 levels which had demonstrably worsened.

---

[2] "Cervical vertebrae (C1-C7)" refer to "the seven segments of the vertebral column located in the neck. STEDMAN'S MEDICAL DICTIONARY 2118 (28th ed. 2006).

[3] "Neuro" refers to "nerve, nerve tissue, the nervous system." STEDMAN'S MEDICAL DICTIONARY 1307 (28th ed. 2006).  "Foramina" the plural form of "foramen" refers to "[a]n aperture or perforation through a bone or a membranous structure." STEDMAN'S MEDICAL DICTIONARY 756-57 (28th ed. 2006).  Dr. Jones explained that "[t]he neuroforaminal are the little holes in the bony spinal canal through which the nerve roots exit." CP at 327.

On cross-examination, Dr. Lang admitted that Olson suffered from extensive degenerative pathology in his cervical spine. Dr. Lang explained that smoking can contribute to degenerative changes and he knew that Olson was a smoker, however, he stated that he did not believe the neck condition was "simply a result of aging and congenital changes." CP at 262. He stated that the disc protrusion that Olson has "is generally associated with injury." CP at 263.

Dr. Lang was asked about a statement he made in his prior deposition regarding whether he had stated that the C6-C7 findings were the result of natural degeneration:

> Q: Do you recall testifying last month that the more recent problems or progression at C6-7 are likely due to a natural progression of degenerative pathology?
>
> A: I would have to see that. . . . All right. Yeah. I say "At C6-C7 but the C5-C6, I think, has been implicated all along."

CP at 287-88. He also acknowledged that Dr. Saeed determined that the C7 findings had not worsened, pursuant to electrodiagnostic studies, and that he testified just the month before that he would defer to Saeed with regard to worsening:

> Q: And do you recall stating that you would defer to [Dr. Saeed] as to whether his studies showed a worsening?
>
> A: Yes.

CP at 287.

Relevant to the C5 level, Dr. Lang testified that pursuant to electrodiagnostic studies made in 2017, findings indicated that C5 nerve roots appeared to be functional. Dr. Lang interpreted this as meaning that changes related to C5 radiculopathy on either side had resolved. Dr. Lang admitted stating in prior testimony that C5-C6 findings had improved:

> Q: [Do] you recall stating . . . . that the C5-6 findings were improved in August of 2017?

A: Yes.

CP at 287.

Finally, Dr. Lang acknowledged that Olson reported having moved a wood stove three years before and feeling a pop in his back, and that this incident "could be consistent with any worsening of symptoms [Olson] might have reported after that." CP at 282.

C. DEPOSITION TESTIMONY OF DR. D. CASEY JONES

Dr. Jones performed independent medical examinations of Olson on behalf of Sierra Pacific in February 2006, February 2008, April 2013, December 2013, and August 2017. As part of the examinations, he reviewed treatment records from Dr. Lang and others, including MRI scan reports and reports from electrodiagnostic studies. Dr. Jones determined that Olson suffered no objective worsening of his cervical condition since his previous examination in December 2013; rather, Olson's neck motion was slightly improved. Dr. Jones also testified that the August 2017 electrodiagnostic study was consistent with earlier studies and showed that "[s]ome things were a little bit better; some things were a little bit worse." CP at 354. Dr. Jones testified:

> Frankly, I don't think any of his cervical changes or his electrodiagnostic abnormalities relate[] to the cervical spine. I don't think any of them are related to his welding activities while he was studying welding.

CP at 355.

III. INDUSTRIAL APPEALS JUDGE DECISION

In a November 13, 2018, order the industrial appeals judge (IAJ) entered a proposed order and decision, which reversed the Department's order denying Olson's application. The IAJ remanded for the reopening of Olson's claim. The IAJ relied on the testimony of Dr. Lang, writing in his order:

7

Olson, through the testimony of Dr. Lang, has shown that he has suffered a worsening of his condition in his neck by both radiographic and electrodiagnostic studies. Taking the record as a whole, this worsening took place between October 22, 2014 and September 26, 2017.

CP at 49. The IAJ also stated that "[t]his case illustrates the well-worn principal that reasonable medical minds can differ. This case is razor close." CP at 49. The IAJ entered the following findings of fact:

3. On October 22, 2014, Harry Olson's objective findings proximately caused by the industrial injury were reversal of the cervical curve with retrolisthesis, disc narrowing, a broad bulge at C5-C6 and C6-C7, narrowing of the openings through which the nerve roots pass at both C4-C5, C5-C6 and C6-C7, and mild central canal stenosis present at C6-C7 and to a lesser extent at C5-C6. A February 23, 2012 electrodiagnostic study showed that Mr. Olson had long standing left C5, C6, and C7 changes; C5 had improved, but it was worse at C7, as well a[s] moderately severe ulnar neuropathy.

4. On September 26, 2017, Harry Olson's objective findings proximately caused by the industrial injury were disc narrowing, a broad bulge at C5-C6 and C6-C7, narrowing of the openings through which the nerve roots pass at C4-C5, C5-C6, and C6-C7, and mild to moderate central canal stenosis present at C6-C7, and to a lesser extent at C5-C6. The finding in an August 21, 2017 electrodiagnostic study was moderately severe bilateral C7 radiculopathy.

5. Harry Olson's Nick [sic] degenerative disc disease and central canal stenosis and bilateral radiculopathy(s) proximately caused by the industrial injury objectively worsened between October 22, 2014 and September 26, 2017.

CP at 49-50.

Sierra Pacific petitioned for review from the Board. Sierra Pacific claimed that Olson had not met "his burden of proving that a cervical condition, causally related to the 2007 training program welding activities, objectively worsened between October 22, 2014 and September 26, 2017[.]" CP at 15. On February 4, 2019, the Board granted review.

8

IV. BOARD DECISION

The Board upheld the decision of the industrial appeals judge. In its order, the Board "granted review to clarify Findings of Fact 3 and 4 to fully reflect Mr. Olson's objective findings, to remove a scrivener's error from Finding of Fact 5, and to clarify the conditions listed in Finding of Fact 5." CP at 8. The Board found that Olson's condition worsened as a result of his industrial injury and entered the following relevant findings:

> 3. On October 22, 2014 [the date Olson's claim was closed], Mr. Olson's objective findings proximately caused by the industrial injury were arm circumference measurements of 29.5 cm on the right and 29 cm on the left; electrodiagnostic findings of improved longstanding C5-6 radiculopathy on the left as compared to previous studies and worsened C6-7 radiculopathy on the right as compared to previous studies; MRI findings of reversal of the cervical curve with retrolisthesis; disc narrowing; a broad bulge at C5 through C7; narrowing of the openings through which the nerve roots pass at C4 through C7; and mild central canal stenosis present at C6-C7 and, to a lesser extent, at C5-6.
>
> 4. On September 26, 2017, Mr. Olson's objective findings proximately caused by the industrial injury were diminished temperature sensation in the right middle finger; arm circumference measurements of 23 cm on the right and 23 cm on the left; electrodiagnostic findings of moderately severe bilateral C7 radiculopathy; MRI findings of degenerative changes from C3 through T1; moderate central canal narrowing from C3 to C6; moderate to severe neuroforaminal narrowing at C5-6 on the right and C7-T1 on the left; a moderate circumferential bulging annulus at C5-7 with a broad-based central disc protrusion; and narrowing of the openings through which the nerve roots pass at C4-7.
>
> 5. Mr. Olson's cervical degenerative disc disease, central canal stenosis, and radiculopathy proximately caused by the industrial injury objectively worsened between October 22, 2014, and September 26, 2017.

CP at 9.

V. SUPERIOR COURT DECISION

Sierra Pacific appealed the Board's order to the superior court. The superior court held a bench trial where it considered the entire administrative record and heard argument from Sierra

Pacific and Olson. Verbatim Report of Proceedings (VRP) 3-28. After reviewing the entire record, the superior court adopted the Board's findings and conclusions. CP 492-94.

The superior court affirmed all of the Board's findings and found:

1. The Court independently reviewed and considered the full and complete record provided from the Board of Industrial Insurance Appeals.

2. The preponderance of evidence does not establish that any of the Board's findings of fact are incorrect.

CP at 493.

Therefore, the superior court affirmed the Board's order concluding:

2. The Findings of Fact of the Board of Industrial Insurance Appeals #1-5 are affirmed.

3. Between October 22, 2014, and September 26, 2017, Defendant Olson's cervical condition proximately caused by the industrial injury objectively worsened within the meaning of RCW 51.32.160.

4. The Board of Industrial Insurance Appeals' Order, dated February 19, 2019, reopening Defendant Olson's claim is affirmed.

5. Judgment should be entered in favor of [Olson] and against [Sierra Pacific], [ ] Olson's claim should be remanded to the Washington Department of Labor and Industries to provide benefits, and such other and further relief as allowed by law.

CP at 493.

Sierra Pacific appeals.

ANALYSIS

Sierra Pacific challenges the superior court's decision to affirm the Board's determination that the April 2007 welding activities proximately caused a cervical condition and associated objective findings that worsened between October 2014 and September 2017. Specifically, Sierra

No. 54724-4-II

Pacific contends that Dr. Lang's medical testimony fails to make the required showing to support the superior court's decision.

I. LEGAL PRINCIPLES

Under the Industrial Insurance Act (IIA)[4], a worker may file an application with the Department of Labor and Industries to reopen a workers' compensation claim for further benefits provided he or she shows an aggravation of his or her disability. RCW 51.32.160(1)(a); *Eastwood v. Dep't of Labor & Indus.*, 152 Wn. App. 652, 654, 656, 219 P.3d 711 (2009). In order to show an aggravation of the injury proximately caused by the industrial incident, Olson must initially establish the following elements:

(1) The causal relationship between the injury and the subsequent disability must be established by medical testimony.

(2) The claimant must prove by medical testimony, some of it based upon objective symptoms, that an aggravation of the injury resulted in increased disability.

(3) The medical testimony must show that the increased aggravation occurred between the terminal dates of the aggravation period.

(4) A claimant must prove by medical testimony, some of it based upon objective symptoms which existed on or prior to the closing date, that his disability on the date of the closing order was greater than the supervisor found it to be.

*Id.* at 657-58 (internal footnote omitted).

Medical testimony is testimony provided by medical experts. *Id.* at 658. The "[m]edical testimony must establish that it is more probable than not that the industrial injury caused the subsequent disability." *Zipp v. Seattle Sch. Dist. No. 1*, 36 Wn. App. 598, 601, 676 P.2d 538 (1984). "Testimony that goes no further than to indicate that the injury might have caused the

---

[4] Title 51 RCW.

11

condition is insufficient; there must be some evidence of probative value that removes the question of causal relation from the field of speculation and surmise." *Id.* at 601. The medical testimony must be based on some objective evidence. *Moses v. Dep't of Labor & Indus.*, 44 Wn.2d 511, 517 (1954).

On appeal to the superior court, "the findings and decision of the [B]oard shall be prima facie correct and the burden of proof shall be upon the party attacking the same." RCW 51.52.115. The superior court may substitute its own findings for those of the Board only if it determines that the Board's findings and decision are incorrect by a preponderance of the evidence. *Gorre v. City of Tacoma*, 184 Wn.2d 30, 36, 357 P.3d 625 (2015). A party can challenge the Board's findings by demonstrating " 'from a fair preponderance of credible evidence', that the Board's findings and decision are incorrect." *Harrison Mem'l Hosp. v. Gagnon*, 110 Wn. App. 475, 482, 40 P.3d 1221 (2002) (internal quotation marks omitted) (quoting *McClelland v. ITT Rayonier, Inc.*, 65 Wn. App. 386, 390, 828 P.2d 1138 (1992)). The burden of persuasion is on the appellant. RCW 51.52.115; *Harrison Mem'l Hosp.*, 110 Wn. App. at 484. The superior court applies de novo review to an appeal from the Board based on the administrative record developed before the Board. RCW 51.52.115; *Eastwood*, 152 Wn. App. at 657.

On appeal to the appellate court, the statutory scheme results in a different standard of review than is typical for appeals of administrative decisions. *Hendrickson v. Dep't of Labor & Indus.*, 2 Wn. App. 2d 343, 351, 409 P.3d 1162 (2018). Under the IIA, we review whether substantial evidence supports the superior court's findings of fact and review de novo whether the findings support the conclusions of law. *Id.* Substantial evidence exists if there is evidence sufficient to persuade a fair-minded, rational person of the truth of the matter asserted. *Am.*

*Nursery Prods., Inc. v. Indian Wells Orchards*, 115 Wn.2d 217, 222, 797 P.2d 477 (1990). When reviewing the Board's findings for substantial evidence, we review the evidence in the light most favorable to the prevailing party below. *Harrison Mem'l Hosp.*, 110 Wn. App. at 485. We do not reweigh the evidence, the credibility of the witnesses, or again apply the burden of persuasion. *Id.* at 485-86; *Zavala v. Twin City Foods*, 185 Wn. App. 838, 859, 343 P.3d 761 (2015). The burden of proof is also on the appellant to prove that the decision below was incorrect. RCW 51.52.115.

II. CAUSAL CONNECTION BETWEEN APRIL 2007 WELDING ACTIVITIES AND OLSON'S CERVICAL CONDITION AND WORSENING OF THAT CONDITION.

Sierra Pacific argues that the superior court's findings that Olson's cervical condition was related to the April 2007 welding injury and that this injury worsened between October 2014 and September 2017 are not supported by substantial evidence. More specifically, Sierra Pacific argues that there was not sufficient medical testimony and other evidence to support the Board's findings and conclusions connecting the objective findings to the 2007 industrial incident.

Sierra Pacific makes two general arguments. First, Sierra Pacific argues Dr. Lang provided contradictory testimony on cross-examination during two depositions that shows an absence of connection between the incident and some of the cervical conditions. Second, Sierra Pacific contends that certain objective symptoms referenced in the Board's finding of facts numbers 4 and 5 were not specifically relied on by Dr. Lang to support an aggravation of Olson's injury, insufficient medical testimony supports these findings, and other causes, unrelated to the industrial incident, explain Olson's condition.

Sierra Pacific points to extensive evidence in the record to illustrate the complexity of the causation issues at the center of this case, including Olson's involvement in multiple car accidents, an injury from moving a wooden stove, a congenitally small spinal canal, and a history of smoking

and argues that these other potential causes have not been sufficiently ruled out as a cause of Olson's condition.

Viewing the record as a whole, Sierra Pacific has not met its burden of proof. Dr. Lang clearly testified that a causal connection existed between the April 2007 welding incident and a worsening of Olson's cervical condition. He also confirmed the accuracy of the causal statement he signed as part of Olson's reopening application. This testimony, while general, represents sufficient medical testimony to connect Olson's objective worsening to the industrial incident. Sierra Pacific arguments to the contrary are unpersuasive considering the burden it must carry.

First, regarding Dr. Lang's cross-examination, Sierra Pacific does not show how Dr. Lang's specific answers during his depositions convincingly impeach his general opinion of medical causation in this case. Following his general testimony establishing causation, Sierra Pacific asked Dr. Lang a series of questions about deposition testimony he provided to Sierra Pacific the previous month. For example, Dr. Lang was asked whether he remembered previously testifying that C6-C7 problems were "likely due to a natural progression of degenerative pathology" and he responded, "Yeah, I [said], 'At C6-C7 but the C5-C6, I think, has been implicated all along.' " CP at 287-88. When asked if he previously testified that he was "relating C5-C6, but saying C6-C7 was unrelated," Dr. Lang said "Yes. That's what I stated." CP at 288. Appellants argue that these statements during deposition constitute a concession by Dr. Lang that Olson's C6-7 pathology "is not related to the welding activities." Br. of Appellant at 23 (emphasis omitted). However, the deposition testimony falls short of a direct contradiction on this point. Rather than asking Dr. Lang to explain the differences in this previous testimony, Sierra Pacific chose to move to other topics in the deposition, thereby failing to obtain clarification that his

general and more recent statement of causation was untrue.[5]   While portions of Dr. Lang's testimony may be less than clear, Sierra Pacific overstates the consequences under a substantial evidence standard.

Second, with respect to Sierra Pacific's assertions of other potential causes for Olson's conditions and an absence of detail in the medical testimony to support the Board's findings, we note that the Board made their determinations based on the record as a whole, taking into account Olson's testimony, Tobeck's testimony, Dr. Lang's findings, and Dr. Jones's findings.  Taking a similarly broad view of the evidence, we agree with the Board and the superior court that Dr. Lang's general statements combined with all of the other testimony and evidence sufficiently indicated that the objective findings indicated a worsening and were related to the workplace injury.

In the end, we review the evidence in the light most favorable to Olson, the party that prevailed below. *Harrison Mem'l Hosp.*, 110 Wn. App. at 485.  Looking at the record as a whole and in light of our standard of review, Sierra Pacific fails to overcome Dr. Lang's findings that a sufficient causal connection existed to support the superior court's conclusions.  As acknowledged by the superior court, this is a close call.  While Dr. Lang's testimony is unclear at times, we defer credibility assessments to the trier of fact. *Hendrickson*, 2 Wn. App. 2d at 351–52.  Appellate courts are not well-suited to determine the credibility of the witnesses. *Hendrickson*, 2 Wn. App.

---

[5] Also on cross-examination, Dr. Lang acknowledged that Dr. Saeed had concluded that C7 findings had not worsened and that Dr. Lang had previously said that he would defer to Dr. Saeed. Like Dr. Lang's answers on cross examination about the C6-C7, Sierra Pacific failed to ask follow up questions leaving, again, the plausible conclusion that Dr. Lang's testimony had simply changed from his earlier deposition.  Once again, this testimony falls short of a retraction of Dr. Lang's assertion that generally a causal connection existed between the April 2007 welding incident and a worsening of Olson's cervical condition.

2d at 351-52. Ultimately, the Board had the power to judge the credibility of the witnesses. *Rosales v. Dep't of Labor & Indus.*, 40 Wn. App. 712, 715,700 P.2d 748 (1985). Although Dr. Lang's statements on cross-examination may arguably go to the weight to be given to his findings, the Board was entitled to evaluate this weight and Dr. Lang's credibility as a whole and to find, as it did, that it was sufficient for its conclusions—specifically, that there had been an objective worsening between October 22, 2014, and September 26, 2017, and that it was casually related to the industrial injury. We review this case for substantial evidence in the light most favorable to Olson, not to substitute our judgment for the superior court or the Board. Sierra Pacific has not met its burden under this standard.

Because there is substantial evidence supporting the Board's findings, we affirm the superior court.

## ATTORNEY FEES

Olson requests attorney fees pursuant to RAP 18.1 and RCW 51.52.130. RAP 18.1(a) permits the recovery of reasonable attorney fees or expenses when recovery of such fees is permitted by applicable law. Pursuant to RCW 51.52.130(1):

> [I]n cases where a party other than the worker or beneficiary is the appealing party and the worker's or beneficiary's right to relief is sustained, a reasonable fee for the services of the worker's or beneficiary's attorney shall be fixed by the court.

Because we affirm the superior court's holding, Olson is entitled to his attorney fees.

## CONCLUSION

In viewing the record as a whole in a light most favorable to the party prevailing below, we determine Sierra Pacific has not met its burden in proving that the substantial evidence does

No. 54724-4-II

not support the superior court's findings that Olson suffered a worsening of his cervical condition attributable to the April 2007 welding activities. We affirm the superior court's decision.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

WORSWICK, P.J.

VELJACIC, J.