# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ANNEMARIE CATLETT,<br><br>        Respondent,<br><br>        v.<br><br>ROBERT LEE TEEL,<br><br>        Appellant. | DIVISION ONE<br><br>No. 80059-1-I<br><br>PUBLISHED OPINION |

DWYER, J. — Robert Teel appeals from the entry of an antiharassment protection order that restrains his behavior. The protection order was based solely on Teel's actions in causing public records to be published—a right that is protected under both the United States and Washington Constitutions. Accordingly, the protection order is invalid under chapter 10.14 RCW, which provides that an antiharassment protection order cannot be based on actions that qualify as constitutionally protected speech. In addition, the protection order imposes an unconstitutional content-based restriction and serves as an unconstitutional prior restraint on Teel's speech. Given all of this, we reverse.

I

Robert Teel and Annemarie Catlett were involved in a romantic relationship that ended in March 2017. In April 2017, a deputy from the Island County Sheriff's Office telephoned Teel to inform him that Catlett did "not want him to come around" anymore. Teel subsequently availed himself of a website

entitled MuckRock.com to make a request for public records concerning Catlett from the Island County Sheriff's Office.

MuckRock is a third party Internet service through which users can initiate public records requests. By default, the requests and returned records are made publicly available on MuckRock's website. However, users can check a box to "Embargo" the requests and records, making them private.

In July 2017, MuckRock received and published on its website public records that were requested by Teel. These public records included (1) an incident report by Catlett stating that she and Teel broke up and that she did "not want him to come around," (2) an incident report regarding a verbal dispute between Catlett and Teel, (3) an incident report by Catlett stating that Teel had been stalking her, (4) an incident report stating that Catlett had been taken into protective custody for a suicide attempt, and (5) an incident report wherein Catlett stated that Teel had been feeling suicidal.

In August 2017, Teel used MuckRock to make additional public records requests of sheriff's offices in Oregon and California. These requests generated numerous reports, including (1) two arrest reports describing Catlett's behavior that led to her arrest for harassment, (2) an arrest report detailing Catlett's arrest for domestic assault, (3) an incident report stating that Catlett had allegedly assaulted her domestic partner, and (4) an application for an emergency protection order against Catlett. These public records were also made publicly available on MuckRock's website.

In February 2018, Catlett discovered that the public records received by MuckRock were published online and could be found by searching her name on an Internet search engine. Catlett contacted MuckRock and asked that it remove the public records from its website. Teel subsequently received an e-mail from MuckRock indicating that Catlett had requested that the public records requests and responses be made private. Teel then clicked the "Embargo" box on MuckRock's website and MuckRock confirmed to Teel that the requests and responses were now private.

Between October 2017 and December 2018, Teel and Catlett exchanged several messages via text and Facebook. These included a "Happy Birthday" message from Catlett to Teel, a happy Mother's Day message from Teel to Catlett, a happy Father's Day text from Catlett to Teel, and an exchange of several text messages between the two on the day that Teel had shoulder and wrist surgery.

On December 18, 2018, Teel stopped by a store at which Catlett's youngest daughter worked to drop off Christmas gifts and a card for her and her sister. Catlett's daughter was not at the store so Teel dropped the gifts off at Catlett's home, placing them on the front porch. After Teel left Catlett's home, he and Catlett drove by each other at an intersection traveling in opposite directions. Later that day, Catlett sent Teel a text message thanking him for the card and gifts.

The following day, Catlett contacted a deputy at the Island County Sheriff's Office to make an incident report regarding Teel's conduct on the

3

previous day. The deputy subsequently telephoned Teel to inform him of the report. Teel asked the deputy for a copy of the report, and the deputy informed Teel how to make a public records request.

On December 26, 2018, Teel initiated another public records request via MuckRock seeking additional records concerning Catlett and for records regarding a convicted felon named Terry Martin. Teel later testified that he had suspected that Catlett and Martin had been engaged in a money laundering scheme.

In January 2019, MuckRock received Catlett's December 2018 incident report, screen shots of text messages between Catlett and Teel, and photographs of the Christmas card and gifts that Teel had dropped off at Catlett's home. The Island County Sheriff's Office also sent MuckRock a copy of an incident report from October 2017 regarding Catlett and Martin. This document stated that Catlett and Martin were romantically involved and that Catlett telephoned the Island County Sheriff's Office to report that Martin had been harassing her.

Upon being notified by MuckRock that these records were available to view on its website, Teel clicked the "Embargo" box to hide the records from public view. After 30 days, however, the embargo on the documents expired automatically, thus making these documents viewable to the public on MuckRock's website. One result of Teel's request for public records concerning both Catlett and Martin was that court documents regarding Martin's conviction

4

for fraud were imbedded in Internet hyperlinks that contained records about Catlett.

On February 10, 2019, Catlett's neighbor, Jack Yang Ng, informed Catlett that he had seen Teel drive by Catlett's home very slowly. Several days later, Catlett filed a petition for a protection order. In the petition, Catlett asserted that Teel had been stalking and harassing her.

On March 26, 2019, a hearing on the petition took place before a court commissioner of the Island County Superior Court. The commissioner entered an order for protection against Teel, which restricted him from being within an unstated distance of Catlett's residence, place of employment, and equestrian facility. Teel subsequently filed a motion for revision. On May 13, 2019, the superior court heard the motion and upheld the issuance of the protection order. The superior court's oral ruling was followed by its entry of findings of fact and conclusions of law. Therein, the superior court concluded that Teel's actions in "making multiple public records requests . . . as to have them appear when Ms. Catlett's name was searched on the internet" constituted unlawful harassment. Additionally, the superior court awarded attorney fees to Catlett.

Teel appeals.

II

As an initial matter, the parties dispute which actions provided the factual basis for the superior court's entry of the protection order.[1] Teel contends that

---

[1] "After the superior court has decided [a] motion for revision, any appeal is from the superior court's decision, not the commissioner's." In re Vulnerable Adult Pet. for Winter, 12 Wn. App. 2d 815, 829, 460 P.3d 667 (2020).

the protection order was based solely on his actions in causing public records to be published online.[2]  In response, Catlett asserts that the protection order was additionally based on Teel's acts of both dropping gifts off at her home in December 2018 and driving slowly by her home in February 2019.  The record supports Teel's contention.

Courts can enter protection orders upon finding that "unlawful harassment" exists:

> At [a] hearing, if the court finds by a preponderance of the evidence that unlawful harassment exists, a civil anitharassment protection order shall issue prohibiting such unlawful harassment.

RCW 10.14.080(3).

"Unlawful harassment" is defined, in relevant part, as "a knowing and willful *course of conduct* directed at a specific person which seriously alarms, annoys, harasses, or is detrimental to such person, and which serves no legitimate or lawful purpose."  RCW 10.14.020(2) (emphasis added).  Thus, "unlawful harassment" requires a finding of a "course of conduct."

In claiming that the protection order was based on conduct other than Teel's actions in causing public records to be published online, Catlett points to the superior court's findings of fact 7 and 14.

Finding of fact 7 states:

> While there was periodic text communication there was no personal contact until December of 2018 when Ms. Catlett saw Mr. Teel drive past her at Bayview on South Whidbey Island.  He stopped

---

[2] Throughout this opinion we state that Teel "caused public records to be published" rather than "published public records."  This is because MuckRock makes the public records requested through its service publicly viewable on its website.  Thus, it was MuckRock, not Teel, that directly published the public records.  But it was Teel's actions in initiating the requests that caused them to be published.

his vehicle and stared at her.  Ms. Catlett was startled but continued with her day.  When she got home she was disturbed to find that Mr. Teel had been to her home and left gifts for her adult daughters and her dogs.  Ms. Catlett initially tried to respond politely.

Next, finding of fact 14 states:

Ms. Catlett was informed on February 10, 2019 by a friend and neighbor, Jack Yang Ng, that he had seen Mr. Teel's vehicle driving very slowly by Ms. Catlett's home.  Shortly thereafter, Ms. Catlett filed the Petition.

Although the superior court made these findings of fact, neither of them served as a basis for the protection order.  Instead, Teel's actions in requesting public records in a manner that made them appear online was the only "course of conduct" referenced by the superior court:

Mr. Teel's action of knowingly and willfully making multiple public records requests, both in 2017 and late in 2018, in such a way as to have them appear when Ms. Catlett's name was searched on the internet is a course of conduct under RCW 10.14.020.

Conclusion of Law 2.

The subsequent conclusion of law made by the superior court states that this "course of conduct" served no legitimate or lawful purpose:

Mr. Teel's actions, including making a public records request regarding Mr. Terry Martin's conviction for fraud in such a manner that it was included in the information available when a person searched Ms. Catlett's name on the internet, were directed at Ms. Catlett and had no lawful or legitimate purpose.

Conclusion of Law 3.

No conclusion of law characterized any other actions taken by Teel as constituting a course of conduct.  Thus, as explained by the superior court's conclusions of law, Teel's actions in causing public records to be published

7

online served as the sole basis for the superior court's entry of the protection order.

## III

Teel contends that the protection order was entered in error because the publishing of public records is protected speech under both the United States and Washington Constitutions. Hence, Teel avers, causing public records to be published cannot serve as the basis for a protection order entered pursuant to chapter 10.14 RCW. We agree.

## A

Before addressing whether the publishing of public records is protected speech under the United States and Washington Constitutions, we note that the statutory definition of "course of conduct" expressly excludes from its ambit constitutionally protected free speech:

> "Course of conduct" means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose. [It] includes, in addition to any other form of communication, contact, or conduct, the sending of an electronic communication, *but does not include constitutionally protected free speech*.

RCW 10.14.020(1) (emphasis added).

Therefore, a protection order that is based solely on constitutionally protected free speech is invalid under chapter 10.14 RCW.

## B

We review rulings on challenges invoking the right to free speech under the First Amendment de novo. Resident Action Council v. Seattle Hous. Auth., 162 Wn.2d 773, 778, 174 P.3d 84 (2008). In determining whether a court's

determination violates an individual's right to free speech, we "'make an independent examination of the whole record' to ensure the judgment does not constitute a forbidden intrusion on the field of free expression." Duc Tan v. Le, 177 Wn.2d 649, 669-70, 300 P.3d 356 (2013) (internal quotation marks omitted) (quoting New York Times Co. v. Sullivan, 376 U.S. 254, 285, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964)).

The First Amendment to the United States Constitution, which applies to the states through the due process clause of the Fourteenth Amendment, provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. CONST. amend. I. Notably, the First Amendment applies to the publication of information on the Internet. Reno v. Am. Civil Liberties Union, 521 U.S. 844, 870, 117 S. Ct. 2329, 138 L. Ed. 2d 874 (1997).

The Supreme Court has explained that the publication of public records is protected speech under the First Amendment. In Cox Broad. Corp. v. Cohn, 420 U.S. 469, 495, 95 S. Ct. 1029, 43 L. Ed. 2d 328 (1975), the Court held that "the First and Fourteenth Amendments command nothing less than that the States may not impose sanctions on the publication of truthful information contained in official court records open to public inspection." Although the Court directed its holding toward the publication of official court records, its reasoning suggests that the publication of all public records—regardless of kind—is protected under the First Amendment. Indeed, "the interests of privacy fade when the information involved already appears on the public record." Cox Broad. Corp., 420 U.S. at

9

494-95. Thus, the Court reasoned, there is no social value in limiting the publication of truthful information that is contained in the public record:

> The publication of truthful information available on the public record contains none of the indicia of those limited categories of expression, such as "fighting" words, which "are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality."

Cox Broad. Corp., 420 U.S. at 495 (quoting Chaplinsky v. New Hampshire, 315 U.S. 568, 572, 62 S. Ct. 766, 86 L. Ed. 1031 (1942)).

A few years later, in Florida Star v. B.J.F., 491 U.S. 524, 109 S. Ct. 2603, 105 L. Ed. 2d 443 (1989), the Court clarified that the First Amendment protects the publication of information contained in police reports available to the public. Specifically, the Court held that a statute violated the First Amendment by imposing damages on a newspaper for publishing a rape victim's name that it had obtained from a publicly-released police report. Florida Star, 491 U.S. at 532. The Court reasoned that the punishment was not narrowly tailored to further a compelling state interest. Florida Star, 491 U.S. at 541. There may be times, however, when an individual's right to privacy may prevent another from publishing truthful information about that individual:

> We do not hold that truthful publication is automatically constitutionally protected, or that there is no zone of personal privacy within which the State may protect [an] individual from intrusion . . . . We hold only that where a newspaper publishes truthful information which it has lawfully obtained, punishment may lawfully be imposed, if at all, only when narrowly tailored to a state interest of the highest order.

Florida Star, 491 U.S. at 541.

10

By comparison, our Supreme Court has explained that the Washington Constitution provides broader protection than does the First Amendment to the publication of public records. Our state constitution provides that "[e]very person may freely speak, write and publish on all subjects, being responsible for the abuse of that right." CONST. art. I, § 5. Thus, in State v. Coe, 101 Wn.2d 364, 385-86, 679 P.2d 353 (1984), the court reversed an order finding a news broadcaster in contempt of court for publishing tape recordings that had been presented as evidence during a trial. The court held that "Const. art. 1, § 5 guarantees an *absolute right* to publish and broadcast accurate, lawfully obtained information that is a matter of public record by virtue of having been admitted into evidence and presented in open court." Coe, 101 Wn.2d at 378 (emphasis added). In stressing that this right is absolute, the court declined to balance the defendant's right to a fair trial against the broadcaster's right to free speech. Coe, 101 Wn.2d at 381. The court stated that "such balancing is not appropriate . . . because the right of the press to broadcast accurate, lawfully obtained copies of tapes previously played in open court is absolute." Coe, 101 Wn.2d at 381.

The protection afforded by article I, section 5 is not limited to information that becomes a matter of public record solely by being admitted into evidence and presented in open court. When information enters the public record—regardless of how that occurs—the public generally has access to that information pursuant to the Public Records Act, chapter 42.56 RCW. It is true that an individual's right to privacy may sometimes prevent the *initial disclosure*

of certain types of information.[3]  However, an individual's right to privacy cannot prevent the publication of information that has *previously* been lawfully disclosed. Indeed, in discussing public records that were lawfully subject to disclosure, our Supreme Court has stated that "an individual has no constitutional privacy interest in a *public* record."  Nissen v. Pierce County, 183 Wn.2d 863, 883, 357 P.3d 45 (2015).  Therefore, article I, section 5 guarantees an individual's right to publish accurate, lawfully obtained public records.

C

Here, Teel initiated public records requests concerning Catlett and Martin and, as a result, MuckRock received the records and published them on its website.  These public records contained numerous police reports and court documents, including (1) reports detailing Catlett's behavior that led to her arrest for harassment and domestic assault, (2) a restraining order against Catlett, (3) an incident report stating that Catlett should be evaluated by a mental health professional, (4) an incident report stating that Catlett and Martin were romantically involved and that Martin harassed her, and (5) court documents regarding Martin's fraud conviction.

Because the public records that Teel caused to be published are all police reports and court records, Teel's actions enjoy protection under the First Amendment.  See Florida Star, 491 U.S. at 541 (holding that the publication of

---

[3] See RCW 42.56.050 ("A person's 'right to privacy[]' . . . is invaded or violated only if disclosure of information about the person: (1) Would be highly offensive to a reasonable person, and (2) is not of legitimate concern to the public."); see, e.g., Wash. Pub. Emps. Ass'n v. Wash. State Ctr. for Childhood Deafness & Hearing Loss, 194 Wn.2d 484, 505-09, 450 P.3d 601 (2019) (applying a rational basis test to several agencies' disclosure of state employees' names and birthdates pursuant to a public records request).

publicly-available police reports is subject to strict scrutiny under the First Amendment); Cox Broad. Corp., 420 U.S. at 495 (holding that the First Amendment "command[s] nothing less than that the States may not impose sanctions on the publication of truthful information contained in official court records open to public inspection"). To be valid under the First Amendment, then, the protection order must be "narrowly tailored to a state interest of the highest order." Florida Star, 491 U.S. at 541.

Although we have stated generally that "[p]rotecting citizens from harassment is a compelling state interest," State v. Noah, 103 Wn. App. 29, 41, 9 P.3d 858 (2000), the question presented to us is whether the specific protection order entered against Teel is narrowly tailored to further a compelling state interest. It is not.

In Florida Star, the Supreme Court suggested that an individual's privacy interest might allow the government to restrict the publication of truthful information. 491 U.S. at 541. As explained above, however, an individual does not have a privacy interest in public records that are lawfully subject to disclosure pursuant to Washington law. Because Catlett does not dispute that the contested public records were lawfully disclosed to Teel, she has no claim to a privacy interest in these records that would preclude Teel from publishing them.[4]

---

[4] Even if the government had unlawfully disclosed the contested public records to Teel—which it did not—Teel's right to publish these records might still be protected under the First Amendment. Indeed, "where the government has made certain information publicly available, it is highly anomalous to sanction persons other than the source of its release." Florida Star, 491 U.S. at 535. In such a circumstance, "it is most appropriate to assume that the government had, but failed to utilize, far more limited means of guarding against dissemination than the extreme step of punishing truthful speech." Florida Star, 491 U.S. at 538.

13

Indeed, the protection order entered herein infringes on the state interest advanced by the Public Records Act. The Public Records Act states that "the policy of this chapter [is] that free and open examination of public records is in the public interest, even though such examination may cause inconvenience or embarrassment to public officials or others." RCW 42.59.550(3). Undoubtedly, the publication of public records that are already subject to disclosure encourages the free and open examination of such records by making them even more accessible to the public. Thus, by restricting Teel from publishing public records, the protection order is directly at odds with the policy of the Public Records Act. The protection order is not narrowly tailored to further a compelling state interest. Therefore, it is violative of the First Amendment.

Teel's actions in causing public records to be published is also protected under the Washington Constitution. As explained above, article I, section 5 guarantees an individual's right to publish accurate, lawfully obtained information that is a matter of public record. Although an individual's right to privacy may prevent the *disclosure* of certain information pursuant to a public records request, the disclosure of public records is not here at issue. Rather, at issue is the publication of previously disclosed public records. Accordingly, the protection order violates Teel's right to speak freely under article I, section 5 of the Washington Constitution.

Catlett advances two arguments as to why Teel's speech is not protected under the state or federal constitutions. First, Catlett asserts, Teel's actions in causing public records to be published did not constitute constitutionally

14

protected speech because it harassed her. However, "'[t]here is no categorical "harassment exception" to the First Amendment's free speech clause.'" Rodriguez v. Maricopa County Cmty. Coll. Dist., 605 F.3d 703, 708 (9th Cir. 2010) (quoting Saxe v. State Coll. Area Sch. Dist., 240 F.3d 200, 204 (3d Cir. 2001)). In fact, we have previously struck down a section of an unconstitutionally overbroad statute defining the crime of harassment, which criminalized various forms of conduct wherein the actor had the intent to harass. City of Everett v. Moore, 37 Wn. App. 862, 867, 683 P.2d 617 (1984). In doing so, we reasoned that this section of the statute "d[id] not have the 'precision of regulation' required by the First Amendment." Moore, 37 Wn. App. at 866 (quoting Nat'l Ass'n for Advancement of Colored People v. Button, 371 U.S. 415, 438, 83 S. Ct. 328, 9 L. Ed. 2d 405 (1963)). In any event, the Public Records Act encourages the "free and open examination of public records . . . even though such examination may cause inconvenience or embarrassment to public officials or others." RCW 42.59.550(3). Therefore, speech that harasses does not lose its constitutional protection by virtue of that fact alone.

Second, Catlett asserts that Teel's actions in causing the identified public records to be published is not constitutionally protected speech because it constitutes libel. Again, Catlett is wrong. "Washington no longer distinguishes between libel and slander, such that Washington law recognizes a cause of action only for defamation." Life Designs Ranch, Inc. v. Sommer, 191 Wn. App. 320, 341, 364 P.3d 129 (2015). Further, the First Amendment generally permits states to "define for themselves the appropriate standard of liability for a

15

publisher . . . of defamatory falsehood injurious to a private individual." <u>Gertz v. Robert Welch, Inc.</u>, 418 U.S. 323, 347, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974). In Washington, the four elements of defamation are falsity, an unprivileged communication, fault, and damage. <u>Herron v. KING Broad. Co.</u>, 112 Wn.2d 762, 768, 776 P.2d 98 (1989).

Catlett does not contend that the information contained in the identified public records was false. Instead, she asserts that, because documents regarding Martin's criminal proceedings were imbedded in Internet hyperlinks to records concerning her, an individual visiting these hyperlinks might believe that Catlett was involved in Martin's criminal behavior. However, in determining whether a statement is defamatory, we are "bound to invest words with their natural and obvious meaning, and may not extend language by innuendo or by the conclusions of the pleader." <u>Sims v. Kiro, Inc.</u>, 20 Wn. App. 229, 234, 580 P.2d 642 (1978). Thus, "[t]he defamatory character of the language used must be certain and apparent from the words themselves." <u>Sims</u>, 20 Wn. App. at 234. Because Catlett does not contest the veracity of any of the individual public records, Teel's actions in causing them to be published does not constitute libel.

In sum, Teel's actions in causing public records to be published is exempt from the definition of a "course of conduct" because the actions constitute "constitutionally protected free speech." RCW 10.14.020(1). Accordingly, the protection order is invalid under chapter 10.14 RCW.

16

IV

Teel and amici assert that the protection order also imposes an unconstitutional content-based restriction on Teel's speech. We agree.

Under the First Amendment, "government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." Police Dep't of City of Chicago v. Mosley, 408 U.S. 92, 95, 92 S. Ct. 2286, 33 L. Ed. 2d 212 (1972). Likewise, article I, section 5 protects against content-based restrictions on speech. Bering v. SHARE, 106 Wn.2d 212, 244-45, 721 P.2d 918 (1986).

"Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." Reed v. Town of Gilbert, Ariz., 576 U.S. 155, 163, 135 S. Ct. 2218, 192 L. Ed. 2d 236 (2015). Further, "[c]ontent-based restrictions on speech are presumptively unconstitutional and are thus subject to strict scrutiny." Collier v. City of Tacoma, 121 Wn.2d 737, 748-49, 854 P.2d 1046 (1993) (citing City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 46-47, 106 S. Ct. 925, 89 L. Ed. 2d 29 (1986)); see also Bering, 106 Wn.2d at 244-45 (applying a strict scrutiny analysis to a content-based restriction challenged under article I, section 5).

The protection order entered against Teel imposes an unconstitutional content-based restriction on his speech. By design, protection orders entered pursuant to chapter 10.14 RCW prohibit conduct that is logically connected to the conduct that serves as the basis for the order. See RCW 10.14.080(3) ("[I]f the court finds . . . that unlawful harassment exists, a civil antiharassment protection

17

order shall issue prohibiting such unlawful harassment."). Because the protection order was based solely on Teel's actions in causing public records about Catlett and Martin to be published, it prohibits Teel from publishing public records about Catlett—and to some extent Martin—in the future.[5] In other words, the protection order imposes a content-based restriction by preventing Teel from publishing public records on certain topics—namely, those concerning Catlett and Martin.

This content-based restriction is not narrowly tailored to promote a compelling governmental interest. As explained above, Catlett has no privacy interest in the identified public records and the protection order conflicts with the state interest promoted by the Public Records Act. Moreover, the protection order inflicts a chilling effect on Teel's protected speech—a key evil sought to be avoided by the adopters of the First Amendment. That this is so is illustrated by the decision in Miami Herald Pub. Co. v. Tornillo, 418 U.S. 241, 244, 94 S. Ct. 2831, 41 L. Ed. 2d 730 (1974), in which the Supreme Court struck down a statute that required newspapers to provide equal print space for a political candidate's response whenever a newspaper published material critical of a candidate. This was necessary, the Court explained, because when "[f]aced with the penalties that would accrue . . . [for] news or commentary arguably within the reach of the . . . statute, editors might well conclude that the safe course is to avoid controversy." Tornillo, 418 U.S. at 257. Similarly, the risk of being subject to the

---

[5] Pursuant to the protection order, Teel may be able to publish some public records concerning Martin. But if publishing any public records about Martin would also imbed those records in Internet hyperlinks with records about Catlett, the protection order would then prohibit Teel from doing so.

penalties of violating the protection order could coerce Teel to follow the safe course and avoid publishing certain public records—a constitutionally protected activity—because such action could lead to government-imposed penalties.

For these reasons, the protection order imposes an unconstitutional content-based restriction on Teel's speech in violation of the First Amendment and article I, section 5.

V

Teel and amici additionally contend that the protection order imposes an unconstitutional prior restraint on Teel's future protected speech. We agree.

Because the protection order prohibits Teel from publishing public records about Catlett and Martin in the future, it imposes a prior restraint. See Bradburn v. N. Cent. Reg'l Library Dist., 168 Wn.2d 789, 802, 231 P.3d 166 (2010) ("A prior restraint is an official restriction imposed on speech or another form of expression in advance of its occurrence."). Moreover, this prior restraint is plainly unconstitutional under article I, section 5. "[U]nlike the First Amendment, article I, section 5 categorically prohibits prior restraints on constitutionally protected speech." Bradburn, 168 Wn.2d at 801. Because the publishing of accurate and lawfully obtained public records is constitutionally protected speech, the prior restraint imposed by the protection order violates the Washington Constitution.

This prior restraint on Teel's speech also violates the United States Constitution. To be valid under the First Amendment, a prior restraint "first, must fit within one of the narrowly defined exceptions to the prohibition against prior restraints, and, second, must have been accomplished with procedural

safeguards that reduce the danger of suppressing constitutionally protected speech." Se. Promotions, Ltd. v. Conrad, 420 U.S. 546, 559, 95 S. Ct. 1239, 43 L. Ed. 2d 448 (1975). The exceptional cases permitting prior restraints include prohibitions against obscenity, incitements to violence, and restrictions during times of war. Near v. Minnesota ex rel. Olson, 283 U.S. 697, 716, 51 S. Ct. 625, 75 L. Ed. 1357 (1931). No recognized exception applies here.

Accordingly, the protection order imposes an unconstitutional prior restraint on Teel's speech.

VI

Catlett requests an award of attorney fees on appeal pursuant to RAP 18.9(a) and RCW 10.14.090(2). We decline Catlett's request. Moreover, because the protection order was entered in error, the award of attorney fees to Catlett in the superior court must be vacated.

Reversed and remanded for further proceedings consistent with this opinion.

_____
Dwyer, J.

We concur:

_____          _____
Chun, J.                         Mann, C.J.

20