# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | | |
|---|---|---|
| AIDEN ASBACH, | | No. 60325-0-II |
| | Respondent, | (consolidated with Nos. 60331-4-II and 60335-7-II) |
| v. | | |
| ADAM COUTO, | | |
| | Appellant. | |
| KARINA ASBACH, | | |
| | Respondent, | |
| v. | | |
| ADAM COUTO, | | ORDER GRANTING MOTION TO PUBLISH AND PUBLISHING OPINION |
| | Appellant. | |
| KARINA ASBACH, | | |
| | Respondent, | |
| v. | | |
| ADAM COUTO, | | |
| | Appellant. | |

Respondents and two non-party participants move to publish this court's opinion dated March 31, 2026, in this case. Following consideration, the court grants the motion. Accordingly, it is

**SO ORDERED** that the opinion will now be published.

PANEL: Jj. Maxa, Veljacic, Price

FOR THE COURT:

_Maxa, J._

MAXA, J.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | | |
|---|---|---|
| AIDEN ASBACH, | | No. 60325-0-II |
| | Respondent, | (consolidated with Nos. 60331-4-II and 60335-7-II) |
| v. | | |
| ADAM COUTO, | | |
| | Appellant. | |
| KARINA ASBACH, | | |
| | Respondent, | |
| v. | | |
| ADAM COUTO, | UNPUBLISHED OPINION | |
| | Appellant. | |
| KARINA ASBACH, | | |
| | Respondent, | |
| v. | | |
| ADAM COUTO, | | |
| | Appellant. | |

MAXA, J. – In this consolidated appeal, Adam Couto appeals the trial court's grant of domestic violence protection orders (DVPOs) to his former wife, Karina Asbach, and his adult son, Aiden Asbach. Couto also appeals the trial court's award of attorney fees for the renewal of a DVPO for his minor daughter, NC.

Couto and Karina[1] divorced in 2012. Since then, Couto has had multiple DVPOs issued against him regarding Karina, Aiden, and NC. Testimony in these cases and previous DVPO proceedings show that Couto frequently screamed at his family, threw things, waved a knife around, and engaged in other coercive, aggressive, and emotionally manipulative behaviors. Aiden's DVPO expired when he became an adult in 2023.

In 2024, Couto published a YouTube video in which he attempted to reach out to Aiden now that he was an adult. In the video, he stated that Karina had a narcissistic personality disorder and lies. Couto characterized this video as an attempt at reconciliation with Aiden.

Karina filed petitions for another DVPO for herself and to renew the DVPO for NC. Aiden also filed a petition for a DVPO based on the YouTube video and an allegation that Couto had intentionally shown up to Aiden's workplace and at a grocery store where NC was.

The trial court granted the DVPOs for Karina and Aiden. The court also renewed the DVPO for NC for one year, to which Couto had stipulated. The court found that Couto's YouTube video was a form of coercive control. The court's DVPOs required Couto to remove any YouTube video regarding Karina, Aiden or NC, and prohibited him from posting or sharing any videos or other media with references to them.

---

[1] Because of their shared last name, we use Karina and Aiden's first names for clarity. No disrespect is intended.

We hold that (1) the trial court did not abuse its discretion in granting DVPOs to Karina and Aiden, and (2) the trial court did not err in granting attorney fees to Karina for the renewal of NC's DVPO. However, we hold that the trial court must modify the prohibition against posting videos and other media to be more narrowly tailored so as to not violate Couto's First Amendment rights. In addition, we deny Couto's request to reassign this case to a different judge or venue on remand.

Accordingly, we affirm the trial court's entry of the DVPOs for Karina and Aiden and the award of attorney fees for the renewal of NC's DVPO. We remand for the trial court to modify the prohibition against posting videos in a manner consistent with this opinion.

FACTS

Couto and Karina previously were married, and they divorced in 2012. During the divorce proceedings, Karina cited Couto's domestic violence and controlling and manipulative behaviors as reasons for the divorce.

Before their divorce, Couto withheld money from Karina that was needed to pay bills and removed Karina's name from utility bills. Karina stated that Couto "flipped over tables, dented doors, stabbed the kitchen counter with a knife, dented another part of the counter, thr[ew] a tool through a window, thr[ew] a chair against the wall which made a hole in the wall, and pushed an end table through a wall in the bedroom." 60325-0-II Clerk's Papers (CP) at 149. In addition, Karina recalled a time in which Couto stated that he was going to hurt Aiden and NC. Karina stated that Couto also would emotionally manipulate her and the children.

As part of their divorce decree, Karina received a restraining order against Couto in perpetuity because of domestic violence. Their stipulated parenting plan also limited Couto's contact with Aiden and NC because of abusive use of conflict.

After a domestic violence incident in 2020, Karina received DVPOs for her, Aiden, and NC against Couto, and the trial court required Couto take parenting classes.[2] At the time, Aiden was 14 and NC was 11. In 2022, the trial court amended Couto and Karina's parenting plan and prohibited contact between Couto and the children until he completed parenting classes. The trial court stated that Couto "uses conflict in a way that endangers or damages the psychological development" of the children. 60331-4-II CP at 102. The trial court renewed the DVPOs for both Aiden and NC every year. Aiden's DVPO expired in October 2023 when he turned 18.

In July 2024, Couto posted a public video to YouTube that he stated was "for my son Aiden." *See* 60331-4-II CP at 149-61. In the video, Couto stated that he repeatedly tried to contact Aiden but his contact information was kept from him. He also stated that he was sad that he had not seen Aiden in three years. Couto stated in the video that Karina has narcissistic personality disorder and lies, which caused Aiden to have an abnormal relationship with her.

*Procedural History*

In July 2024 – before Couto posted his YouTube video, and shortly after the DVPO for NC expired – Karina filed a petition to renew the DVPO with respect to NC. She asked for the DVPO to be renewed for 31 months, until NC turned 18.

In August 2024, Karina and Aiden filed individual petitions for DVPOs. They both filed declarations describing the events outlined above, along with the evidence from their prior DVPO proceedings. Karina's declaration supporting renewal also stated that shortly after NC's DVPO had lapsed, Couto appeared at a grocery store where NC was. This caused NC to have a panic attack.

---

[2] This court affirmed the trial court's entry of the DVPOs. *Asbach v. Couto*, No. 55158-6-II (Wash. Ct. App. Sept. 28, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2055158-6-II%20Unpublished%20Opinion.pdf.

The trial court held a hearing on the petitions. Regarding the renewal petition for NC, the trial court stated that it would not relitigate issues of domestic violence that previously were litigated, but "whether Mr. Couto has established by a preponderance of the evidence that acts of domestic violence will not reoccur." 60331-4-II CP at 466. Couto admitted that he had not attended any of the domestic violence courses the court required as a condition of the previous DVPOs. Couto also told the court that he did not see domestic violence treatment as being worth his time and energy. The trial court noted that Couto engaged in a "series of acts that seem to be manipulative and on the edge, carefully avoiding criminal prosecution." 60331-4-II CP at 466.

Couto stipulated to entry of a DVPO regarding NC for a period of one year, while Karina sought a longer period. The trial court granted the petition to renew NC's DVPO for one year. The renewal order stated that Couto must not "resume acts of domestic violence against the protected person or the protected person's children or household members who are minors . . . when the protection order expires." 60335-7-II CP at 648. The court awarded Karina her attorney fees.

Regarding Karina's and Aiden's petitions for new DVPOs, Karina testified that Couto threatened to share confidential mental health and medical information through YouTube videos. She stated that it felt like Couto was using her past experiences to humiliate her in front of Aiden and NC. Karina testified that even if she received a DVPO, Couto still would try to harm and embarrass her. She described their relationship as involving a lot of name calling, yelling, and withholding of money, and stated that Couto treated her, Aiden, and NC like they were his property. Karina also testified that Couto had tried to contact Aiden after his 18th birthday.

Aiden testified that in October 2023 after his 18th birthday, he worked at a McDonald's restaurant. Aiden had not seen Couto for several years. That week, Aiden saw Couto in the

7

drive-through line where he worked. Aiden testified that this was uncommon because Couto never liked McDonald's. He stated that the incident made him feel anxious and cautious that Couto may be around him. Aiden also changed his last name to Asbach when he turned 18 to distance himself from Couto. He testified that he believed Couto was trying to undermine his relationship with his mother. Aiden worried that Couto's YouTube videos would cause embarrassment and shame by publicizing their family issues.

The trial court granted Karina's and Aiden's petitions for DVPOs. The court found that Couto "has subjected the protected person to . . . coercive control; unlawful harassment; or stalking." 60331-4-II CP at 542; 60325-0-II CP at 584.

The court stated,

Domestic violence means physical harm, bodily injury, assault, or the infliction of fear of physical harm, bodily injury, or assault, nonconsensual sexual conduct, or nonconsensual sexual penetration, coercive control, unlawful harassment, or stalking of one intimate partner by another intimate partner, or in subsection (b), of one family or household member by another family or household member.

It's important to reference, because if something happened to one household member, then all have been subjected to domestic violence under this definition. And here we have multiple historical findings of domestic violence, both in the divorce case and in the 2020 DVPO.
. . . .

But clearly [Couto] admits that he had contact with [NC]; clearly he admits the videos; clearly he acknowledges that this is manipulative and intended -- he doesn't say that word. That's my word. But his testimony acknowledges all of the things that the Court is required to find for coercive control.

Rep. of Proc. (RP) at 5-8.

The court ordered Couto to pay attorney fees and costs to both Karina and Aiden.

Aiden's order contained the following language:

[Couto] shall be required to immediately remove any and all videos he has posted on YouTube, or any other internet platform, regarding the petitioner or either of his children. [Couto] shall be required to take all necessary steps with any and all third

8

parties to remove any and all videos from the internet regarding the petitioner or either of his children. *[Couto] shall be restrained from posting, sharing, transmitting to third parties or the like any videos or other such media which refers to the petitioner or the parties' children, whether by name or otherwise in any manner whatsoever.*

60325-0-II CP at 590 (emphasis added). Karina's and NC's DVPOs contained identical language.

Couto appeals the trial court's grant of DVPOs to Karina and Aiden, the trial court's award of attorney fees to Karina in renewing NC's DVPO, and the language in the orders prohibiting Couto from posting videos or other media referencing Aiden, Karina, and NC.[3]

ANALYSIS

A.    DOMESTIC VIOLENCE PROTECTION ORDER

Couto argues that the trial court erred in entering the DVPO orders regarding Karina and Aiden. We disagree.

1.    Standard of Review

We review a trial court's decision to grant a protection order for an abuse of discretion. *In re Domestic Violence Protection Order for Timaeus*, 34 Wn. App. 2d 670, 678, 574 P.3d 127 (2025). A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or reasons. *Id.*

We review the trial court's findings of fact for substantial evidence. *Id.* Substantial evidence is evidence "sufficient to persuade a fair-minded person of the truth of the matter asserted." *Id.* We do not weigh the credibility of witnesses or the persuasiveness of evidence. *Id.*

---

[3] Couto does not appeal the trial court's award of attorney fees to Karina and Aiden for their DVPO petitions. Couto also does not appeal the trial court's renewal of NC's DVPO.

2.  Legal Principles

RCW 7.105.225(1)(a) states that a court shall issue a DVPO if it finds that "the petitioner has been subjected to domestic violence by the respondent" by a preponderance of the evidence. A court may not deny a protection order because "[t]he conduct at issue did not occur recently or because of the passage of time since the last incident of conduct giving rise to the petition." RCW 7.105.225(2)(e).

RCW 7.105.010(10)(b) defines "[d]omestic violence" as "[p]hysical harm, bodily injury, assault . . . coercive control; unlawful harassment; or stalking of one family or household member by another family or household member."

RCW 7.105.010(4)(a) states,

> "Coercive control" means a pattern of behavior that is used to cause another to suffer physical, emotional, or psychological harm, and in purpose or effect unreasonably interferes with a person's free will and personal liberty.  In determining whether the interference is unreasonable, *the court shall consider the context and impact of the pattern of behavior* from the perspective of a similarly situated person.

(Emphasis added.)

3.  Analysis – Karina

Couto argues that the trial court abused its discretion in granting the DVPO for Karina. We disagree.

Couto's primary argument is that the trial court only entered a DVPO because of alleged threats Couto made to Karina's attorney to reveal her personal information on the internet.  But Couto concedes that the trial court did not comment directly on this issue, and there was significant additional evidence beyond Couto's alleged threats to Karina's attorney.  Therefore, we reject this argument.

Couto also argues that the YouTube video in which he asserted that Karina had a narcissistic personality disorder was insufficient to show domestic violence. But in determining whether coercive control exists, we do not view the YouTube video in isolation from its surrounding context. RCW 7.105.010(4)(a). Karina's testimony and declaration show that Couto was physically violent and emotionally manipulative toward Karina. And Karina testified that she felt like Couto continued to try to humiliate her, which was a continued pattern of his abuse from when they were married. Substantial evidence supports the trial court's determination that Karina experienced Couto's attempts at coercive control. And coercive control is a form of domestic violence. RCW 7.105.010(10)(b).

Accordingly, we hold that the trial court did not err in granting Karina's petition for a DVPO.

4.    Analysis – Aiden

Couto argues that the trial court abused its discretion in granting the DVPO for Aiden. We disagree.

Couto argues that Aiden's DVPO petition was frivolous and not supported by substantial evidence. Couto appears to argue that the YouTube video was insufficient to show domestic violence and that the trial court did not find that the incident at McDonald's happened by a preponderance of the evidence.

But the trial court had evidence from the divorce and previous DVPOs in addition to this evidence. And without considering the McDonald's incident, whether Couto's actions amounted to coercive control that could be considered domestic violence depends on the persuasiveness of the evidence and Aiden's credibility, which we do not weigh. *Timaeus*, 34 Wn. App. 2d at 678. Therefore, the trial court did not abuse its discretion.

11

Couto argues that evidence of domestic violence against Karina or NC could not be used to assess whether Aiden's DVPO petition could be granted. Couto's argument takes issue with the trial court's statement, "if something happened to one household member, then all have been subjected to domestic violence under [RCW 7.105.010(10(b)]." RP at 5. Couto argues that the statute refers to a single victim and a single perpetrator.

But the Supreme Court has held under previous civil domestic violence protection order statutes that domestic violence against a mother can constitute domestic violence against a child. *See Rodriguez v. Zavala*, 188 Wn.2d 586, 591-94, 398 P.3d 1071 (2017) (analyzing former RCW 26.50.010(3)'s definition of domestic violence). Couto argues that this ruling applies only to minor children, but the reasoning in *Rodriguez* applies equally to an adult child living in the same household.

Apart from the trial court's ruling regarding domestic violence directed at other family members, RCW 7.105.010(4)(a) requires the trial court to consider the "context and impact of the pattern of behavior" to determine whether coercive control amounts to domestic violence. Here, substantial evidence supports the trial court's determination that the context and impact of Couto's pattern of behavior was intentional in order to interfere with Aiden's life. RCW 7.105.010(4)(a).

Couto had a pattern of emotionally and psychologically manipulative behavior toward Karina, Aiden, and NC. When Couto did not get his preferred outcome, evidence at trial showed that he nonetheless attempted to get Aiden's attention through an online video that he would publicly disseminate to create conflict between Aiden and Karina. In the context of Couto's previous conduct, this was sufficient to show that Couto attempted to coercively control Aiden.

RCW 7.105.010(4)(a). And coercive control is a form of domestic violence. RCW 7.105.010(10)(b).

Accordingly, we hold that the trial court did not abuse its discretion when it granted Aiden's petition for a DVPO.

B.      ATTORNEY FEES FOR NC'S DVPO

Couto argues that the trial court erred in awarding attorney fees to Karina for the renewal of the DVPO for NC because he, not Karina, was the prevailing party. We disagree.

RCW 7.105.310(1)(j) gives the trial court broad discretion to "[r]equire the respondent to . . . reimburse the petitioner for costs incurred in bringing the action, including reasonable attorneys' fees" in issuing "any type of protection order." We review an award of attorney fees for an abuse of discretion. *Sullivan v. Schuyler*, 31 Wn. App. 2d 791, 812, 556 P.3d 157 (2024).

First, Couto argues that the trial court abused its discretion because Karina's request for a DVPO exceeding one year was frivolous and made in bad faith. He emphasizes that he stipulated to a renewal of the DVPO for a period of one year, and RCW 7.105.315(2) limits a protection order that restrains the respondent from contacting minor children to one year. But even though the length requested exceeded the statutory limit, Karina's request for entry of a DVPO regarding NC – to which Couto stipulated – was not frivolous.

Second, Couto argues that attorney fees were inappropriate because the DVPO was renewed for only one year, to which he stipulated, rather than the 31 months that Karina requested. Couto argues that this makes him a prevailing party. But RCW 7.105.310(1)(j) does not use the language "prevailing party" and instead permits a trial court to award fees when it issues a protection order. Here, the trial court issued a DVPO renewal to NC, which permitted Karina to request attorney fees. Couto's argument also fails because this follows the general rule

13

that a party that receives a judgment in its favor is the prevailing party. *Douglass v. Shamrock Paving, Inc.*, 189 Wn.2d 733, 745, 406 P.3d 1155 (2017). Couto does not provide any other arguments for why the trial court abused its discretion.

Accordingly, we hold that that trial court did not abuse its discretion in awarding attorney fees in the DVPO renewal proceeding.

C. FIRST AMENDMENT CLAIM

Couto argues that the portion of the trial court's orders that prohibit him from posting, sharing, or transmitting any videos or other media that refer to Karina, Aiden, or NC violates the First Amendment.[4] We agree that the trial court's orders must be modified to alleviate any First Amendment concerns.

1. Legal Principles

The First Amendment states, "Congress shall make no law . . . abridging the freedom of speech." The First Amendment applies to the states as incorporated the Fourteenth Amendment's due process clause. *Kitsap County v. Mattress Outlet*, 153 Wn.2d 506, 511, 104 P.3d 1280 (2005).[5]

"A prior restraint is an official restriction imposed on speech or another form of expression in advance of its occurrence." *Bradburn v. N. Cent. Reg'l Library Dist.*, 168 Wn.2d 789, 802, 231 P.3d 166 (2010). "To be valid under the First Amendment, a prior restraint 'first,

---

[4] Couto does not argue that the trial court's order requiring him to take down the YouTube video directed to Aiden violates the First Amendment. Couto also does not argue that the use of the YouTube video as evidence in the DVPO hearing violated his First Amendment rights. Last, Couto does not argue that the Washington Constitution provides him with greater speech protections than the United States Constitution.

[5] Article I, section 5 of the Washington Constitution provides that "[e]very person may freely speak, write and publish on all subjects, being responsible for the abuse of that right." Couto does not reference article I, section 5.

must fit within one of the narrowly defined exceptions to the prohibition against prior restraints, and, second, must have been accomplished with procedural safeguards that reduce the danger of suppressing constitutionally protected speech.' " *Catlett v. Teel*, 15 Wn. App. 2d 689, 708, 477 P.3d 50 (2020) (quoting *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559, 95 S. Ct. 1239, 43 L. Ed. 2d 448 (1975)). But prior restraints are allowed against "unprotected speech." *In re Marriage of Suggs*, 152 Wn.2d 74, 84, 93 P.3d 161 (2004). "The exceptional cases permitting prior restraints include prohibitions against obscenity, incitements to violence, and restrictions during times of war." *Catlett,*15 Wn. App. 2d at 708.

The prior restraint doctrine should not be applied if an order (1) is designed to redress past and prospective private wrongs suffered by a person and (2) suppresses only speech that would have an adverse impact on a person rather than any kind of speech. *Bering v. Share*, 106 Wn.2d 212, 237, 721 P.2d 918 (1986). In that situation, a court should apply the analysis for content-based restrictions. *Id.*

The First Amendment prohibits the government from restricting speech based on its content. *Collier v. City of Tacoma*, 121 Wn.2d 737, 748-49, 854 P.2d 1046 (1993). "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163, 135 S. Ct. 2218, 192 L.Ed 2d 236 (2015). "Content-based restrictions on speech are presumptively unconstitutional and are thus subject to strict scrutiny." *Collier*, 121 Wn.2d at 748-49. Under strict scrutiny, a content based restriction will be upheld only if "the restriction serves a compelling State interest, and is narrowly drawn to serve that interest." *Bering*, 106 Wn.2d at 237.

However, a post-publication sanction may be imposed consistent with the First Amendment. *See id.* at 244 (applying article I, section 5 of the Washington Constitution). "Post-publication restraints . . .simply prohibit further exercise of the right after a showing of abuse." *Id.* at 243. Like other content-based restrictions, a post-publication sanction must "serve[] a compelling State interest, and is narrowly drawn to serve that interest." *Id.* at 244.

In addition, the government may regulate certain types of speech without violating the First Amendment. *Virginia v. Black*, 538 U.S. 343, 361, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003). The First Amendment does not protect some types of speech, including "libelous speech, fighting words, incitement to riot, obscenity, and child pornography," as well as true threats. *State v. Kilburn,* 151 Wn.2d 36, 43, 84 P.3d 1215 (2004). And "speech made with the intent to facilitate criminal conduct" or " 'speech integral to criminal conduct' " is unprotected speech. *State v. Homan*, 191 Wn. App. 759, 768, 364 P.3d 839 (2015) (quoting *United States v. Stevens,* 559 U.S. 460, 468, 130 S. Ct. 1577, 176 L. Ed. 2d 435 (2010)).

Because speech that constitutes domestic violence is integral to criminal conduct, such speech is unprotected. *Cf. State v. Brush*, 5 Wn. App. 2d 40, 56-57, 425 P.3d 545 (2018) (holding that a statute providing enhanced punishment for conduct constituting domestic violence because it legitimately penalizes unprotected speech).

2. Analysis

Couto challenges the portions of the trial court's DVPOs that state, "[Couto] shall be restrained from posting, sharing, transmitting, to third parties or the like any videos or other such media which refers to the petitioner or the parties' children, whether by name or otherwise, in any manner whatsoever." 60335-7-II CP at 648-49. The issue here is whether (1) the restriction implicates Couto's First Amendment rights, and (2) if so, whether the restriction is constitutional.

16

a. First Amendment Interest

Couto appears to argue that the trial court's orders are a forward-looking restriction that involves protected speech because his speech does not fall into any unprotected speech category and the order encompasses wide ranging forms of potential speech. Karina argues that the First Amendment does not apply at all because Couto's YouTube video was a form of domestic violence, which is not protected speech. We conclude that the orders potentially implicate Couto's First Amendment interest.

Some of Couto's potential speech restricted by the trial court's DVPOs is speech that constitutes domestic violence, which is unprotected speech. But the trial court's orders prohibit a broader swath of potential speech: he cannot refer to his children in either the specific or abstract, and the prohibition applies to potentially any form of media. The breadth of the restriction implicates Couto's First Amendment interests.

Karina argues that the YouTube video was domestic violence that falls outside of the First Amendment's protection. But Couto does not challenge the trial court's order requiring him to remove his previous YouTube video. He only challenges the prospective restriction on posting any media that mentions his estranged family. Karina also argues that Couto's future YouTube videos could be considered unprotected true threats. Any true threats would not be protected. But again, the orders potentially prohibit more than true threats.

Accordingly, we hold that Couto's First Amendment interests are implicated by the trial court's restriction on what information Couto can publish or share online.

b. First Amendment Analysis

Couto argues that the trial court's DVPOs preventing him from sharing videos online in the future violate the First Amendment. We agree because of the breadth of the orders.

Couto asserts that the trial court's orders are a prior restraint on protected speech under the categorical rule on prior restraint. But under *Bering*, we view the court's order as a content-based restriction rather than a prior restraint. *See* 106 Wn.2d at 237.

The trial court's orders specifically prohibit Couto from posting media "which refers to the petitioner or the parties' children, whether by name or otherwise, in any manner whatsoever." 60335-7-II CP at 648-49. This is a content-based restriction because it "applies to particular speech because of the topic discussed or the idea or message expressed." *Reed*, 576 U.S. at 163. Couto specifically is prohibited from discussing the topic of his children and Karina. Therefore, the trial court's orders constitute a content-based restriction and strict scrutiny applies. *Bering*, 106 Wn.2d at 236-37.

Karina asserts that the court's orders are a post-publication sanction. But *Bering* holds that the analysis for a post-publication sanction is the same as for a content-based restriction: the restriction must "serve[] a compelling State interest, and is narrowly drawn to serve that interest." *Id.* at 244.

Here, we conclude that the State has a compelling interest in the prevention of domestic violence and the prohibition of conduct that is logically connected to a civil protection order.

But the trial court's DVPOs are not narrowly tailored to the type of conduct the orders aim to prohibit. The orders prohibit Couto from discussing his estranged family in any manner whatsoever. As such, the orders reasonably can be read to prohibit Couto from ever acknowledging that he was previously married or has children. Couto also is prohibited from a more general discussion of parenting. And the orders are not limited by the type of medium through which Couto seeks to express his speech. Arguably, Couto could not email a friend

18

about his children or former wife.[6]  Therefore, we conclude that the trial court's orders are not narrowly tailored to the DVPO and violate the First Amendment.

Orders that are narrowly tailored to Couto's conduct must be entered on remand.  Here, the trial court found that Couto's YouTube videos were a form of domestic violence that were intended to generate hostility between Aiden and Karina or threats to divulge personal information.  Such communications are unprotected speech.

On remand, the trial court should craft revised orders consistent with the discussion above.  The orders may prohibit speech that constitutes coercive control or other types of domestic violence, but should protect Couto's First Amendment rights to the extent that his speech does not constitute coercive control or domestic violence.  We appreciate that the existing orders generally reflect this balance; however, clarity in what conduct is permissible would alleviate the risk of violating Couto's First Amendment rights.

Accordingly, we hold that the portions of the DVPOs prohibiting Couto "from posting, sharing, transmitting, to third parties or the like any videos or other such media which refers to the petitioner or the parties' children, whether by name or otherwise, in any manner whatsoever" are not narrowly tailored to serve a compelling government interest and violate the First Amendment.  On remand, the trial court must amend the language of its orders consistent with the discussion in this opinion.

---

[6] Couto states in his brief that he posts online about his experiences with the family court system and his view that the courts express systemic bias towards fathers.  The trial court's order also would prohibit Couto from discussing his personal experience as a method of advocacy, which is political speech that the First Amendment protects.

D.    REASSIGNMENT ON REMAND

Couto argues that on remand, this case should be heard in a different venue or by a different judge.  We disagree.

RCW 4.12.030(2) states that a party may request a change of venue where there is satisfactory proof that "there is reason to believe that an impartial trial cannot be had therein." RCW 4.12.030 requires that a party file a motion in the trial court.  Here, Couto did not file a motion in the trial court for a change of venue.  We decline to address his argument as a challenge to venue.  RAP 2.5(a).

Couto also asks for this court to order reassignment to a new judge.  Reassignment to a new judge on remand is appropriate where the trial judge will exercise discretion on remand regarding the issue that triggered the appeal and has apparently prejudged the issue. *State v. Solis-Diaz*, 187 Wn.2d 535, 540, 387 P.3d 703 (2017).  We remand to a different judge "where review of the facts in the record shows the judge's impartiality might reasonably be questioned." *Id.*

Here, there is no indication that the trial court judge's impartiality might reasonably be questioned.  The trial court judge who held the hearing heard testimony and issued a ruling based on the facts of the case.

Couto argues that a court commissioner who recused from a hearing on the DVPO admitted to "back-channel" or ex parte communications that led to her recusal.  But the commissioner did not indicate that ex parte communication occurred, and the communication was with respect to a different case in which Karina's attorney appeared.  The commissioner determined that recusal was warranted to prevent the appearance of impropriety by a reasonable observer and Couto.  And that commissioner did not enter the DVPOs.

Accordingly, we decline to reassign this case to a different judge or venue on remand.

D.    APPELLATE ATTORNEY FEES

Karina and Aiden request appellate attorney fees.  RCW 7.105.310(1)(j) permits a court to order a respondent to pay court costs and reasonable attorney fees in issuing any type of protection order.  A party may recover appellate fees on appeal of a protection order where attorney fees are permitted in the trial court.  *Sullivan*, 31 Wn. App. 2d at 814.

Here, Karina and Aiden are the prevailing parties on Couto's appeal of the entry of the DVPOs.  Our limited remand is not with respect to the entry of the protective orders, but its scope.  Therefore, we grant Karina's and Aiden's request for attorney fees on appeal.

CONCLUSION

We affirm the trial court's entry of a DVPO for Karina and Aiden and its award of attorney fees for the renewal of NC's DVPO.  We remand to the trial court to modify the prohibition against posting videos and other media in a manner consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

VELJACIC, A.C.J

PRICE, J.

21